UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,                                            Case No. 3:22-cr-3-MJN-2

vs.

GABRIEL IRWIN JOHNSON,            District Judge Michael J. Newman

    Defendant.

---

**ORDER: (1) DENYING DEFENDANT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT (Doc. No. 41); (2) ORDERING THE PROBATION DEPARTMENT TO FILE A SUPPLEMENTAL ADDENDUM TO THE PRESENTENCE INVESTIGATION REPORT CLARIFYING THAT THIRTY-TWO FIREARMS CAN BE ATTRIBUTED TO DEFENDANT; AND (3) CONFIRMING THE SENTENCING HEARING FOR SEPTEMBER 27, 2022 AT 2:30 P.M.**

---

Defendant Gabriel Irwin Johnson ("Johnson") pled guilty on April 29, 2022 to conspiracy to make a false statement during the purchase of a firearm, a violation of 18 U.S.C. § 371. Doc. Nos. 31, 32, 36. The Court referred this matter to the Probation Department to prepare a Presentence Investigation Report ("PSR"). Doc. No. 29. This case is now before the Court on Johnson's objection to the resulting PSR. Doc. No. 41 at PageID 224. On August 10, 2022, the Court held a hearing on Johnson's objection, heard testimony from one witness, and, at the conclusion of the hearing, took the matter under submission. This objection is now ripe for review.

**I.**

**A.    The Gun-Selling Conspiracy**

Camren James Edmonson made a profit from illegally selling guns. Doc. No. 31 at PageID

93; Doc. No. 41 at PageID 194.[1] He was a "straw purchaser"—someone who buys guns to sell to others, including people who cannot legally buy guns—from January 2018 until his arrest in December 2020. Doc. No. 31 at PageID 92–93. Edmondson's scheme involved submitting fraudulent firearm transaction records to federally licensed firearm dealers in Dayton, Ohio and lying on these records—by listing that he was the actual purchaser of the guns in question. Doc. No. 41 at PageID 194. Eventually, Johnson joined this scheme. *Id.*

Timing is key in this case. All parties agree that Edmondson began illegally selling guns by January 19, 2018 and sold as many as fifty-four guns to third parties until his arrest in December 2020. *See id.*; Transcript at 4–5.[2] However, it is less clear exactly when Johnson became involved.

Special Agent Derrick Graham of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), and lead investigator into the conspiracy, testified at the hearing. Tr. at 7. He confirmed that on April 23, 2020, Edmondson texted Johnson, asking if he wanted to buy a gun. *Id.* at 15. Johnson replied, "Picture?" *Id.* at 18. Edmonson quickly replied that he had already sold the gun. *Id.* From this point onward, Edmondson purchased thirty-five guns that he would sell to others. *Id.* at 19.

Graham further testified that Johnson "link[ed] up" with Edmondson in the conspiracy on July 23, 2020. *Id.* at 10. To prove this, Graham testified that when the authorities subsequently searched Johnson's residence pursuant to a search warrant issued in October of 2020, they discovered a firearm that Edmondson had bought on July 23, 2020. *Id.*

Graham further testified that ATF linked the guns to Edmondson by tracing them from the firearm transaction records and communications with the dealers who received those records from

---

[1] These facts come from the Plea Agreement (Doc. No. 31), the Final PSR (Doc. No. 41), and the transcript reflecting the testimony at the hearing on the objection (Tr. at 1).
[2] Hereinafter, citations to the transcript of the hearing on the objections, which was not filed on the docket, will be designated as "Tr." followed by the page number.

Edmondson. *Id.* at 11–12. On December 18, 2020, ATF executed search warrants on Edmondson and his residence, discovering at least fifteen empty firearm boxes inside his home. *Id.* at 13. In total, between July 23, 2020 and December 18, 2020, Graham testified that thirty-two guns were sold during the course of and in furtherance of the conspiracy. *Id.* at 32.

According to Graham, Edmondson told investigators that he sold at least ten guns to Johnson. *Id.* at 23. Likewise, Edmondson sold an unidentified number of guns to unknown third parties. *Id.* at 35–36.

### B. Johnson's Guilty Plea and the PSR

The grand jury indicted Edmondson and Johnson on January 25, 2022. Doc. No. 3. Both pled guilty in April that year. Doc. Nos. 27, 31. Johnson's plea was made pursuant to Fed. R. Crim. P. 11(c)(1)(C), and he agreed to a prison term not to exceed fifty-seven months. Doc. No. 31 at PageID 89. He admitted to the following in the plea agreement Statement of Facts:

> Between on or about January 19, 2018 and continuing through on or about December 18, 2020, both dates being approximate and inclusive . . . Gabriel Irwin Johnson . . . together, with Camren James Edmondson, and other individuals, . . . knowingly, willfully, voluntarily, intentionally, and unlawfully combined, conspired, confederated and agreed, by and between themselves to accomplish a common unlawful plan, scheme and artifice to commit certain offenses . . . includ[ing] making false and fictitious written statements to federally licensed firearms dealers . . . . [Johnson] joined said criminal conspiracy knowing full well its intended objective was to commit said offenses against the United States.

*Id.* at PageID 92. Two instances where Johnson texted Edmondson about the conspiracy are also set forth in the Statement of Facts:

> c. On or about October 30, 2020, [Johnson] sent [Edmondson] a text message which stated in part: "Fr fr tho we could run up some [explicative deleted] today at the store if we can find a good AR and a cheap .40 like A smith or Taurus and maybe a glock I got some bread but I'll out for both of us on these flips fr cause I'm bouta tax tf out these white boys."

3

>    d. On or about November 22, 2020, [Johnson] sent [Edmondson] a text message which stated in part: "Who got a strap rq."

*Id.* at PageID 92–93.

The PSR established that Johnson was legally prohibited from possessing a gun when he first bought a gun from Edmondson. Doc. No. 41 at PageID 195. It further documented Edmondson's purchases from 2018 to 2020, along with each instance in which he submitted false information to firearms dealers. *Id.* at PageID 195–96.

The PSR calculated Johnson's base offense level under U.S.S.G. § 2K2.1. *Id.* at PageID 198. Section 2K2.1(b)(1) applies "[i]f the offense involved three or more firearms[.]" According to the PSR, Johnson was a member of the conspiracy. *Id.* Moreover, since Edmondson sold fifty-four firearms from 2018 to 2020, then Johnson's offense also involved fifty-four firearms. *Id.* Section 2K2.1(b)(1)(C) imposes a six-level enhancement if the number of firearms involved ranged between twenty-five and ninety-nine, so the PSR imposed that enhancement. *Id.*

Johnson objected. *Id.* at PageID 224. As his defense counsel reasoned at the hearing, Johnson became involved in the conspiracy in 2020, so he could not be responsible for all fifty-four firearms. *Id.*; Tr. at 39–41. Accordingly, Johnson argued that the Government could only prove Edmondson directly sold him as few as ten guns. Tr. at 40. Likewise, since Edmondson sold any number of guns through the Internet and to third parties without Johnson's knowledge, then the Government could not prove Johnson was involved in selling more than ten guns in April or July of 2020. *Id.* at 41. Rather, these sales fell outside of the conspiracy. *Id.* at 40–41. Because these sales were not foreseeable, according to Johnson, then the six-level increase does not apply. *Id.*

## II.

The Government must "establish the existence of a factor supporting a sentencing

enhancement by a preponderance of the evidence." *United States v. Aleo*, 681 F.3d 290, 298 (6th Cir. 2012) (citing *United States v. Gibson*, 985 F.2d 860, 866 (6th Cir. 1993)). Section 2K2.1(a) of the Sentencing Guidelines sets a base offense level of fourteen for prohibited persons who commit a firearm-related offense. U.S.S.G. § 2K2.1(a)(6). As mentioned, this base offense level increases depending on how many firearms "the offense involved[.]" § 2K2.1(b). When calculating the number of firearms "involved," the Sentencing Guidelines instruct the Court to "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer." § 2K2.1 cmt. n. 5.

Section 1B1.3 permits a sentencing court, where "there is more than one base offense level[,]" to consider "relevant conduct" in ascertaining the defendant's base offense level. § 1B1.3(a). Relevant conduct includes:

> [I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
>> (i) within the scope of the jointly undertaken criminal activity,
>>
>> (ii) in furtherance of that criminal activity, and
>>
>> (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

§ 1B1.3(a)(1)(B)(i)–(iii). Relevant conduct in a conspiracy comprises three criteria: acts (1) within the scope of the jointly undertaken activity; (2) in furtherance of that criminal activity; and (3) reasonably foreseeable in that activity. § 1B1.3 cmt. n. (3)(A).

5

"The scope of conspiratorial conduct relevant for enhancing a sentence under the Guidelines 'is "significantly narrower" than the conduct needed to obtain a conspiracy conviction.'" *United States v. Bucio*, 857 F. App'x 217, 219 (6th Cir. 2021) (quoting *United States v. McReynolds*, 964 F.3d 555, 563 (6th Cir. 2020)). "Thus, 'in order to hold a defendant accountable for the acts of others [under § 1B1.3(a)(1)(B)], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant.'" *McReynolds*, 964 F.3d at 563 (alteration in original) (quoting *United States v. Campbell*, 279 F.3d 392, 399–400 (6th Cir. 2002)) (citations omitted).

In determining the scope of the activity, "'[a]ny explicit agreement [and any] implicit agreement fairly inferred from the conduct of the defendant and others' may be considered." *United States v. Donadeo*, 910 F.3d 886, 895 (6th Cir. 2018) (quoting § 1B1.3 cmt. n. 3(B)). The Court may consider other factors, "including '(1) the existence of a single scheme; (2) similarities in modus operandi; (3) coordination of activities among schemers; (4) pooling of resources or profits; (5) knowledge of the scope of the scheme; and (6) length and degree of the defendant's participation in the scheme.'" *Id.* (quoting *United States v. Salem*, 657 F.3d 560, 564 (7th Cir. 2011)). "[F]oreseeability . . . is satisfied where the defendant 'was aware that the conspiracy was broader than merely the . . . transactions with which he was involved.'" *Bucio*, 857 F. App'x at 220 (quoting *Campbell*, 279 F.3d at 400).

But relevant conduct "does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." § 1B1.3 cmt. n. (3)(B). Nor is it the case "that the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are . . .

identical." § 1B1.3 cmt. n. (3)(D).

## III.

After considering Graham's testimony and the facts not objected to in the PSR, the Court finds, by a preponderance of the evidence, that Johnson entered the conspiracy to sell firearms on July 23, 2020. *See, e.g.*, *United States v. Orlando*, 281 F.3d 586, 600 (6th Cir. 2002) ("[For] defendants who have been convicted for . . . conspiracy, a district court must differentiate between the coconspirators and make individualized findings of fact for each defendant" (citations omitted)). As noted at the hearing, Defendant does not object to adopting this date as the time he entered the conspiracy. Tr. at 4–5. Since this is the relevant start date, Edmondson's sale of thirty-two firearms from that point onward, therefore, is "relevant conduct" that can be attributed to Johnson for sentencing purposes. These sales were within the scope of their agreement, furthered the conspiracy, and were reasonably foreseeable.

The scope of the agreement between Johnson and Edmondson went beyond ten guns to all sales of guns that either party sold. Text messages between Johnson and Edmondson demonstrate Johnson's willingness to sell firearms to other parties by referencing the pairs' independent "flips[.]" *See* Doc. No. 31 at PageID 92–93. In their sales, both Johnson and Edmondson used the same modus operandi—Edmondson legally bought the guns and then either party could sell them at a higher value to various people, including those who were prohibited from legally buying guns. *See id.* The texts previously mentioned illustrate their coordination with each other. *Id.*; Tr. at 10. For instance, in November, the pair exchanged messages: Johnson asking for a gun to sell and Edmondson giving a price quote. Doc. No. 41 at PageID 196. Crucially, the pair shared profits from their sales, which shows their intent to sell as many guns as they could both together and individually. *Id.* Combined, this demonstrates that the duo agreed to sell all the guns sold together, with Edmondson acting as the straw purchaser while Johnson sold the guns to third

7

parties. Most importantly, Johnson's text messages to Edmondson in October 2020 demonstrate his continued intent to "work[] toward a common goal" without any limitation on when or if the duo would stop their illicit sales. *United States v. Jackson*, 308 F. App'x 899, 906–07 (6th Cir. 2009) (drug quantities that co-conspirators distributed could be attributed to the defendant). With this scope in mind, the other two prongs fall into place.

Edmondson's efforts to sell these guns was "in furtherance of the conspiracy." Both Johnson and Edmondson shared the profit of their criminal proceeds, and they coordinated and communicated their sales with one another. *See* Doc. No. 31 at PageID 92–93; Doc. No. 41 at PageID 196. Ultimately, their documented efforts to illegally sell guns furthered their conspiracy to illegally sell guns.

Finally, Edmondson's sales on the Internet and to third parties were reasonably foreseeable to Johnson. Considering the communications between Edmondson and Johnson discussing their continued efforts to sell firearms, Johnson "was aware that the conspiracy was broader" than his individual sales. *Campbell*, 279 F.3d at 400. Indeed, Johnson even noted how he would "tax tf outta some white boys" in his independent sales, establishing a further contextual indicator that he was aware that either party could persist in selling firearms without the other's knowledge. Doc. No. 31 at PageID 92; *see also, e.g.*, Tr. at 15–16.

Although Johnson suggested at the hearing that he was only responsible for ten guns—because he only knew about these guns—that is not the applicable standard. Johnson entered the scheme a few months after Edmondson solicited him to buy a gun in April 2020. Tr. at 15, 18. Thus, he knew Edmondson was illegally selling firearms by that point, so it remained foreseeable that after Johnson joined, Edmondson would persist in these sales. *See, e.g., Donadeo*, 910 F.3d at 898–99 (defendant who joined conspiracy to defraud school district through shell corporations

could have his coconspirators' creation of shell corporations attributed to him as "relevant conduct"); *United States v. Louchart*, 579 F. App'x 492, 494–95 (6th Cir. 2014) (affirming district court's finding that defendant was responsible for over twenty-five guns where the court heard evidence from coconspirators that defendant participated in selling several firearms). Even if Johnson did not agree to jointly undertake the sale of the total amount of guns here, the amount he planned to sell, and the amount sold, need not be "identical" to be foreseeable. § 1B1.3 cmt. n. 3(D).

## IV.

Accordingly, Johnson's objections are **DENIED**. However, because only thirty-two firearms can be attributed to him, the Court **ORDERS** the Probation Department to file a supplemental addendum reflecting this **WITHIN TEN DAYS of the issuance of this Order**. Sentencing remains set for **September 27, 2022 at 2:30 p.m.**

  **IT IS SO ORDERED.**

Date:   September 12, 2022         s/Michael J. Newman
                      Hon. Michael J. Newman
                      United States District Judge